UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HOWARD ROUX,

               Petitioner,

vs.                         Case No.  2:07-cv-236-FtM-29SPC
                             Case No.  2:06-cr-28-FtM-29SPC
                             Case No.  2:05-cr-103-FtM-29DNF

UNITED STATES OF AMERICA,

               Respondent.

_____

**OPINION AND ORDER**

_____This matter comes before the Court on petitioner Howard Roux's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Doc. #1; 2d Cr. Doc. #19)[1] filed on April 10, 2007.  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 on June 15, 2007  (Doc. #7). Petitioner thereafter filed a Reply (Doc. #10).  For the reasons set forth below, the motion is denied.

**I.**

**Case No. 2:05-cr-103-FtM-29DNF:**  On October 7, 2005 a Criminal Complaint (Cr. Doc. #1) was filed against petitioner Howard Roux

---

[1]The Court will make references to the dockets in the instant action and in the related criminal cases throughout this opinion. The Court will refer to the docket of civil habeas case as "Doc.", and will refer to the docket of the first underlying criminal case (2:05-cr-103-FtM-33DNF) as "Cr. Doc." and the second underlying criminal case (2:06-cr-28-FtM-29SPC) as "2d Cr. Doc."

(petitioner or Roux) charging that by on or about September 23, 2005, petitioner possessed child pornography.  The detailed, seven page Affidavit In Support Of Arrest Warrant included a description of Operation Falcon, an investigation into a third party company which ultimately led to the Fort Myers, Florida investigation of petitioner.  On October 11, 2005, petitioner had his initial appearance and detention hearing before a magistrate judge and was ordered detained as a danger to the community.  On October 12, 2005, a federal grand jury in Fort Myers, Florida returned a one-count Indictment (Cr. Doc. #5) charging petitioner with possessing child pornography from a date unknown but by at least on or about September 23, 2005.  Petitioner was arraigned on October 28, 2005 (Cr. Doc. #13), and a Scheduling Order (Cr. Doc. #14) was entered setting trial for a term beginning December 5, 2005.  The government provided its discovery material on November 8, 2005. (Cr. Doc. #17.)

At the status conference on November 10, 2005, defense counsel requested a continuance of the trial until the February, 2006 trial term in order to prepare the case since it had just been indicted and discovery was recently provided.  (Cr. Docs. #19, 29.)  The Court granted the motion, entering an Order which found that the ends of justice served by granting the continuance outweighed the best interest of the public and petitioner in a speedy trial and excluding the time from the date of the order until the end of the

-2-

February, 2006 trial term from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h).  (Cr. Doc. #19.)

At a January 12, 2006, status conference, defense counsel requested a continuance of the trial until the March, 2006 trial term because more time was needed for legal research and speaking with petitioner in light of the government's plea offer to a superceding information with an increased maximum penalty and the government's statement that there would be a superceding indictment if the offer was not accepted.  (Cr. Docs. ## 21, 22, 30.)  The Court granted the motion, entering an Order which found that the ends of justice served by granting the continuance outweighed the best interest of the public and petitioner in a speedy trial and excluding the time from the date of the order until the end of the March, 2006 trial term from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h).  (Cr. Doc. #22.)

Prior to the March, 2006 trial term, the parties agreed to a disposition of the case pursuant to an Information filed in a new case, discussed below.

On June 6, 2006, the government filed a Motion to Dismiss Indictment (Cr. Doc. #27) because petitioner had been charged in an Information, had pled guilty, and had been sentenced in Case No. 2:06-cr-28.  The Court granted the motion to dismiss on June 7, 2006.  (Cr. Doc. #28.)

**Case No. 2:06-cr-28-FtM-29SPC:** Petitioner and the government reached an agreed disposition which resulted in petitioner signing

-3-

a Waiver of Indictment and Plea Agreement (2d Cr. Docs. ## 1; 3) and the government filing an Information (2d Cr. Doc. #2) on February 10, 2006.  The Information charged that on or about August 13, 2005, petitioner received child pornography.  On February 17, 2006, petitioner waived filing of an indictment, consented to the filing of the Information, and pled guilty pursuant to the Plea Agreement before a magistrate judge.  (2d Cr. Docs. ## 6; 7; 11; 12; 20.)  The district court accepted the guilty plea on February 22, 2006.  (2d Cr. Doc. #10.)  On May 22, 2006, petitioner was sentenced to 109 months imprisonment, followed by life on supervised release.  (2d Cr. Docs. ## 16, 18.)  No direct appeal was filed.

## II.

Petitioner filed this timely § 2255 motion on April 16, 2007. Petitioner's § 2255 Petition sets forth five claims of ineffective assistance of trial counsel.

The legal principles are well settled.  Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so.  Massaro v. United States, 538 U.S. 500 (2003). The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below

-4-

an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

**A.**

Petitioner asserts that his attorney was ineffective by failing to attempt to suppress evidence and statements due to egregious acts by the government agents amounting to entrapment. Specifically, petitioner asserts that a Postal Inspector sent him a letter which contained no reference to any illegal activity and stated that the letter writers were not law enforcement. Petitioner responded to the letter by accessing a website and furnishing the website with his e-mail address. The e-mail address

formed the basis for search warrants issued on July 5, 2005, to two online providers.  Petitioner asserts that all the evidence was obtained in response to this letter, and counsel was ineffective in failing to attempt to suppress the evidence under <u>Sorrells v. United States</u>, 287 U.S. 435 (1932) and <u>Jacobson v. United States</u>, 503 U.S. 540 (1992).  Petitioner states that his attorney told him that he (petitioner) was predisposed to commit the offense so the letter did not constitute entrapment, but petitioner disagrees. (Docs. ## 1, p. 5, Memorandum of Law, ¶ 1; 10, p. 1.)

The government states that on June 27, 2005, a United States Postal Inspector mailed a brochure to petitioner which offered a variety of discreet services for those who share their interest in collecting "CP pics and vids."  (Petitioner denies that the phrase "CP pics and vids" appeared in the brochure.)[2]  The brochure allowed the recipient to order a catalog through the mail or a trial subscription to the archives accessible through a website. On July 5, 2005, petitioner accessed the website for a free limited subscription, identifying himself by name and address.   On September 15, 2005, the agents obtained a search warrant for petitioner's residence, which was executed on September 23, 2005.

The Court finds petitioner's attorney was not ineffective in failing to move to suppress evidence on the basis of entrapment. Entrapment   is   an   affirmative   defense   requiring   government

_____

[2]For purposes of the § 2255 motion, the Court resolves any factual disagreements in favor of petitioner.

inducement of the crime and defendant's lack of predisposition to commit the crime before the inducement.  <u>United States v. Orisnord</u>, 483 F.3d 1169, 1178 (11th Cir. 2007).  Similarly, outrageous government conduct is a defense which focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition.  <u>United States v. Sanchez</u>, 138 F.3d 1410, 1413 (11th Cir. 1998).  As defenses to a criminal charge, neither concept provides for the suppression of evidence as a remedy.

Additionally, in light of the undisputed facts in this case, defense counsel was certainly correct in foregoing either defense. As the factual basis in the Plea Agreement establishes, long before government officials even knew about petitioner, he was involved in subscribing to child pornography websites and downloading child pornography.  Operation Falcon discovered that petitioner had subscriptions dating back to November, 2002.  Petitioner's computer showed over 300 downloaded images.  Petitioner told the magistrate judge at the change of plea that he had read the factual basis carefully and the facts were true.  (2d Cr. Doc. #20, p. 21.)  By petitioner's own admission, the brochure did not solicit anything illegal, and certainly is a far cry from conduct which would constitute any type of entrapment.  Indeed, as <u>Jacobson</u> stated, "[h]ad the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner . . . had promptly availed himself of this criminal

opportunity, it is unlikely that his entrapment defense sould have warranted a jury instruction." <u>Jacobson</u>, 503 U.S. at 550. Petitioner's factual recitation is even less compelling, since he asserts there was not solicitation of any illegal conduct in the brochure and nothing else was sent to petitioner in reply to his response.  No reasonable attorney would have sought suppression based upon entrapment or would have thought entrapment was a viable defense.  Petitioner did not receive ineffective assistance of counsel on this ground.

**B.**

Petitioner argues that his attorney provided ineffective assistance by failing to request a speedy trial in the original case under the Sixth Amendment and the Speedy Trial Act. Petitioner's trial term was originally set for December, 2005, and petitioner said he and his attorney had agreed upon a guilty plea. Petitioner asserts that the only purpose of the continuances was to allow the government to file a superceding indictment with more severe charges.  (Docs. ## 1, p. 5, Memorandum of Law ¶ 3; 10, p. 2.)

Under the Speedy Trial Act a defendant who pleads not guilty shall be brought to trial within seventy (70) days from the filing and making public of the information or indictment or from the date of arraignment, whichever is later.  18 U.S.C. § 3161(c)(1). Certain periods of time are excluded from the seventy day limit. 18 U.S.C. § 3161(h).  The Court concludes that filing the

Information in a separate case did not reset the speedy trial clock, see, e.g., United States v. Young, No. 07-13626, ___ F.3d __, 2008 WL 2168957 (11th Cir. May 27, 2008), and therefore calculates petitioner's speedy trial time beginning from the arraignment on the original Indictment.

Petitioner was arraigned on the Indictment on October 28, 2005, which is excluded from the speedy trial calculation under 18 U.S.C. § 3161(h)(1)(excluding the day of a "proceeding" involving defendant.)  The speedy trial clock therefore started on October 29, 2005.  The next court hearing was the status conference of November 10, 2005, by which time 12 day counted towards the 70 days.  At the status conference defense counsel sought and obtained a continuance, which the district judge found was justified by the ends of justice and the record establishes consideration of the appropriate factors.  Therefore, the time between November 11 and February 28, 2006 was excludable.  18 U.S.C. § 3161(h)(8)(A).  At a January 12, 2006 status conference defense counsel sought and obtained a second continuance, which the district judge found justified by the ends of justice through the end of March, 2006 and the record establishes consideration of the appropriate factors. Therefore, the time until March, 2006 was also excludable under 18 U.S.C. § 3161(h)(8)(A).  Before this excludable time expired, petitioner had pled guilty to the Information on February 17, 2006. Therefore, a total of 12 non-excludable days had expired in the 70-day speedy trial clock.  Since there was no violation of the Speedy

Trial Act, petitioner's attorney was not ineffective in failing to seek relief under the Speedy Trial Act.

Similarly, petitioner's rights under the Sixth Amendment had not been violated and no reasonable attorney would have thought otherwise. Four factors are considered in determining whether a defendant's constitutional right to a speedy trial is violated: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) the prejudice to defendant. <u>United States v. Ingram</u>, 446 F.3d 1332, 1336 (11th Cir. 2006). Here, the time period from arraignment to guilty plea was only 112 days. The reason for the continuances was so that defense counsel could be prepared, and both continuances were found to be in the interests of justice. Petitioner's only reference to wanting a speedy trial was at his change of plea hearing on February 17, 2006. The magistrate judge told petitioner he could still go to trial on the Indictment, but petitioner said he wanted to plead guilty to the Information. (2d Cr. Doc. #20, pp. 4-5.) No prejudice resulted to petitioner. While the maximum penalty for the charge in the Information was greater than in the Indictment, defense counsel was able to negotiate a plea to one count when the investigation clearly determined a multitude of potential counts from petitioner's prior activities with child pornography on the computer. Accordingly, there was no violation of petitioner's Sixth Amendment right, and defense counsel did not provide ineffective assistance in this regard.

## C.

Petitioner asserts that his attorney was ineffective by failing to attempt to suppress all statements he made to the FBI on September 23, 2005, due to coercion, duress, and threats during the interview.  Petitioner concedes that he voluntarily accompanied the FBI agents to the Miami Field Office, that he received <u>Miranda</u> warnings, and that he provided some information to the agents voluntarily.  Petitioner asserts that at some point during the interview he requested counsel because of threats and duress, but was talked out of counsel by an agent in violation of <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981).  Petitioner asserts that all statements he made after requesting counsel should have been deemed not admissible, including at the detention hearing and at sentencing.  (Docs. ## 1, Memorandum of Law, ¶ 2; 10, pp. 1-2.)

A search warrant for petitioner's residence was executed on September 23, 2005, but petitioner was not at home.  Petitioner was attending a CPA continuing education course in Fort Lauderdale.  Petitioner spoke with a special agent at the location, then voluntarily traveled to the FBI Miami Field Office and spoke with Special Agent Michael Leverock.  While in the Miami Field Office petitioner spoke with an FBI agent at petitioner's house and gave instructions to the agent as to where to locate old child pornographic magazines in his garage.  Petitioner also gave consent to search his accounting office, and signed a consent form for his office and residence.  Petitioner also directed the agent over the

telephone to the location of other child pornography in his residence, and signed a written statement at the conclusion of his interview.  Defendant was not arrested at that time.

A reasonable attorney would view the circumstances of this case as being highly problematic in terms of suppression of petitioner's statements based on <u>Edwards</u>.  <u>Edwards</u> only applies to statements made during custodial interrogation, <u>Isaacs v. Head</u>, 300 F.3d 1232, 1260-67 (11th Cir. 2002), and petitioner's voluntary travel to the FBI Field Office and his release at the conclusion of the interview severely undermine the idea that he was in "custody" within the meaning of <u>Edwards</u>.  Additionally, petitioner's version of the facts would establish that many of the incriminating statements would not be subject to suppression under <u>Edwards</u>. During the guilty plea colloquy petitioner was told he had the right to challenge any statement he made to law enforcement or any information or evidence that was seized from him, but that he would be waiving this right by pleading guilty.  Petitioner said he understood this.  (2d Cr. Doc. #20, p. 20.)  Even if all of petitioner's statements had been suppressed, the government had a valid search warrant which resulted in the seizure of the child pornography with which petitioner was charged in the Information. The Court finds that counsel did not provide ineffective assistance

when he failed to seek suppression of the statements under <u>Edwards</u>.

### D.

Petitioner asserts that his attorney was ineffective because he failed to timely communicate with him during the pretrial and plea process.  Petitioner asserts that he first learned of the new charge in a telephone call from his daughter, and that there were several questions his attorney failed to answer.  Petitioner concedes that he agreed with the magistrate judge at the guilty plea colloquy that his attorney had been effective, but asserts there were serious doubts about this by sentencing.  Petitioner asserts that his attorney never answered his questions about how to obtain the legal business and personal data from the seized computers, or how to obtain the return of a seized computer that was not owned by petitioner, or what "loss of Social Security" meant as used in the guilty plea colloquy.  (Docs. ## 1, Memorandum of Law ¶ 4; 10, pp. 2-3.)  The record does not support these claims.

Prior to the guilty plea colloquy, the magistrate judge made sure petitioner understood the charge in the Information, knew of his right to have his case considered by a grand jury, and insured that his waiver of indictment was knowing and voluntary.  (2d Cr. Doc. #20, pp. 2-3.)  Petitioner was placed under oath and advised of his responsibility to tell the truth.  (<u>Id.</u> at 5-6.)  Petitioner stated that he had reviewed the Information with his attorney, had had enough time to discuss the Information with his attorney, was

-13-

satisfied with his attorney's services, that his attorney had done everything petitioner asked him to do in the case.  (<u>Id.</u> at 8-9.)

During the plea colloquy the magistrate judge advised petitioner as follows: "Because you are entering a plea in this case to a felony, you may be denied certain federal benefits, including social security.  Do you understand that?"  Petitioner responded "Yes ma'am."  (2d Cr. Doc. #29, p. 16.)

During the plea colloquy defense counsel raised the issue that certain legitimate data was on the computers and this was going to be provided back to firm that petitioner worked for.  Government counsel stated she had agreed to allow petitioner's company to make copies of legitimate files and would return that, but the computer would be abandoned and forfeited to the government.  (<u>Id.</u> at 11.) Petitioner stated that he understood that other than the legitimate files on the computer, the computers and equipment would be forfeited at the time of sentencing.  (<u>Id.</u> at 16-17.)  During the sentencing hearing defense counsel pointed out that some of the property being forfeited contained legitimate business information which would be copied and provided back to the business. Petitioner stated that his adult daughter would take care of doing the actual copying.  (<u>Id.</u> at 17.)  The prosecutor advised that this matter was being addressed with the third parties involved, and the government was willing to work out anything further that needed to take place.  (<u>Id.</u> at 18.)  The Court finds defense counsel did not provide ineffective assistance.

-14-

**E.**

Petitioner raises claims of ineffective assistance relating to his sentencing. Petitioner asserts that he gave his attorney material in January, 2006 to be used for substantial assistance, but the package of information was not turned over to investigators until five days before the May 22, 2006 sentencing. Petitioner also asserts that defense counsel has failed to file for a Rule 35 motion because of his assistance, including testimony before a grand jury. Petitioner argues that his attorney was ineffective at sentencing because he failed to advise petitioner that there were several mitigating factors that could have applied to him, including age, physical condition, family ties, criminal history, charitable and prior good works, and stated that letters of reference were not needed. Petitioner asserts that these factors and letters could have been presented as a basis for a sentence reduction. Petitioner also argues that counsel should have noted the condition of the box (old, dusty) in which some child pornography was found in his garage. (Docs. ## 1, p. 5, Memorandum of Law, ¶ 5; 10, p. 3.)

The government argues that this issue is barred by the sentence appeal waiver provision of the Plea Agreement. The Plea Agreement contains a waiver of an appeal of sentencing which applies to § 2255 proceedings (2d Cr. Doc. #12, p. 14 ¶ 5) and is broad enough to include claims of ineffective assistance of counsel at sentencing. <u>Williams v. United States</u>, 396 F.3d 1340, 1341

(11th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 246 (2005)  Sentence-appeal waivers are valid if made knowingly and voluntarily.  <u>United States v. Bushert</u>, 997 F.2d 1343, 1350-51 (11th Cir. 1993), <u>cert. denied</u>, 513 U.S. 1051 (1994).  To be enforceable, the government must demonstrate either that the district court specifically questioned the defendant concerning the sentence waiver provision during the guilty plea colloquy or that it is clear from the record that defendant otherwise understood the full significance of the waiver.  <u>Bushert</u>, 997 F.2d at 1351.  The magistrate judge did not specifically question petitioner about this waiver provision, and the record does not otherwise establish petitioner understood the full significance of the waiver.  Therefore, the Court will address the merits of the issue.

The record reflects that petitioner and his attorney reviewed and discussed the Presentence Report.  (2d Cr. Doc. #21, p. 6.) Defense counsel filed a sentencing memorandum (2d Cr. Doc. #13), which the Court read prior to sentencing.  (2d Cr. Doc. #21, p. 7.) Defense counsel told the Court that the memorandum "lays out various issues that Mr. Roux would like brought to the Court's attention, some of which were not in the PSR, some of which were." (2d Cr. Doc. #21, p. 8.)  Defense counsel spoke about petitioner's community activities, including the Red Cross, Kiwanis, and Key Clubs, petitioner's age, lack of criminal history, pending divorce, and medical problems.  (<u>Id.</u> at 8-9.)  Petitioner then obtained notes he had made and informed the Court that he apologized for his

conduct to everyone.  (Id. at 12-13.)  The record thus reflects that petitioner and counsel had discussed sentencing and sentencing factors, and that these were actually presented to the Court. Petitioner knew that his criminal history or lack of criminal history would be an important sentencing factor because the magistrate judge told him so during the guilty plea colloquy.  (2d Cr. Doc. #20, p. 13.)

The decision as to substantial assistance is made solely by the government, and it is the government alone which decides whether to file a motion pursuant to Rule 35(b).  Petitioner understood this because it was explained in his Plea Agreement. (2d Cr. Doc. # 12, pp. 4-5.)  There is no ineffective assistance of counsel for not filing a Rule 35(b) motion.

Accordingly, it is now

**ORDERED**:

1.  Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk shall place of copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___16th___ day of June, 2008.

_____

**JOHN E. STEELE**
United States District Judge

-17-

Copies:
AUSA (Viacava)
Howard Roux